IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Michele Neal, | |
| *On behalf of herself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Hallsons of Lebanon, Inc.; Hallsons Enterprises Inc.; Robert Hall, Jr.; Doe Corporation 1-10; John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Michele Neal, on behalf of herself and similarly-situated individuals, brings this action against Defendants Hallsons of Lebanon, Inc.; Hallsons Enterprises Inc.; Robert Hall, Jr.; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Wage Fairness Act ("OMFWSA"), O.R.C. 4111.01, *et seq.*, O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and for unjust enrichment.

2.     Defendants operate multiple LaRosa's Pizza locations in the Cincinnati area ("Defendants' LaRosa's stores"), including stores in Blue Ash and Lebanon.

3.     Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' LaRosa's stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, Section 34a, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.     All delivery drivers at the Defendants' LaRosa's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Michele Neal**

9.     Plaintiff Michele Neal is a resident of Ohio.

2

10.     Plaintiff is an "employee" of all of the Defendants as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

11.     Plaintiff has given written consent to join this action.

**Defendants**

**Hallsons of Lebanon, Inc.**

12.     Defendant Hallsons of Lebanon, Inc. is a domestic corporation organized under the laws of Ohio.

13.     Hallsons of Lebanon, Inc. is an entity that operates the Defendants' LaRosa's stores.

14.     Upon information and belief, Hallsons of Lebanon, Inc. owns and operates multiple LaRosa's stores in Ohio.

15.     Hallsons of Lebanon, Inc. is the entity that appears on Plaintiff's paystubs for work she completes for Defendants' LaRosa's stores.

16.     Hallsons of Lebanon, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.     Hallsons of Lebanon, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

18.     At all relevant times, Hallsons of Lebanon, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

19. Hallsons of Lebanon, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

20. At all relevant times, Hallsons of Lebanon, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21. Hallsons of Lebanon, Inc.'s gross revenue exceeds $500,000 per year.

**Hallsons Enterprises, Inc.**

22. Defendant Hallsons Enterprises Inc. is a domestic corporation organized under the laws of Ohio.

23. Hallsons Enterprises Inc. is an entity that operates the Defendants' LaRosa's stores.

24. Upon information and belief, Hallsons Enterprises Inc. operates multiple LaRosa's stores in Ohio.

25. Hallsons Enterprises Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26. Hallsons Enterprises Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

27. At all relevant times, Hallsons Enterprises Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

4

28. Hallsons Enterprises Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

29. At all relevant times, Hallsons Enterprises Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

30. Hallsons Enterprises Inc.'s gross revenue exceeds $500,000 per year.

**Robert Hall, Jr.**

31. Defendant Robert Hall, Jr. is the owner of Hallsons of Lebanon, Inc., Hallsons Enterprises Inc., and the Defendants' LaRosa's stores.

32. Robert Hall, Jr. is the President of Hallsons of Lebanon, Inc. and Hallsons Enterprises Inc.

33. Robert Hall, Jr. is the owner of the Hallsons of Lebanon, Inc. and Hallsons Enterprises Inc.

34. Robert Hall, Jr. is the sole officer of Hallsons of Lebanon, Inc. and Hallsons Enterprises Inc.

35. Upon information and belief, Robert Hall, Jr. operates multiple LaRosa's stores in and around the Cincinnati area, including stores in Blue Ash and Lebanon.

36. Robert Hall, Jr. is individually liable to the delivery drivers at the Defendants' LaRosa's stores under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he owns and operates the Defendants' LaRosa's stores, serves as a president and owner of Hallsons of Lebanon, Inc. and Hallsons Enterprises, Inc., ultimately controls

significant aspects of the Defendants' LaRosa's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

37.    Robert Hall, Jr. is the franchisee of the Defendants' LaRosa's stores.

38.    At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had financial control over the operations at each of the Defendants' LaRosa's stores.

39.    At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has a role in significant aspects of the Defendants' LaRosa's stores' day to day operations.

40.    At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had control over the Defendants' LaRosa's stores' pay policies.

41.    At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had power over personnel and payroll decisions at the Defendants' LaRosa's stores, including but not limited to influence of delivery driver pay.

42.    At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' LaRosa's stores.

43.    At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' LaRosa's stores.

6

44.     At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had the power to transfer the assets and liabilities of the Defendant entities.

45.     At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had the power to declare bankruptcy on behalf of the Defendant entities.

46.     At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had the power to enter into contracts on behalf of each of the Defendants' LaRosa's stores.

47.     At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. has had the power to close, shut down, and/or sell each of the Defendants' LaRosa's stores.

48.     At all relevant times, by virtue of his role as owner and president of the Defendants' LaRosa's stores, Robert Hall, Jr. had authority over the overall direction of each of Defendants' LaRosa's stores and was ultimately responsible for their operations.

49.     The Defendants' LaRosa's stores function for Robert Hall, Jr.'s profit.

50.     Robert Hall, Jr. has influence over how the Defendants' LaRosa's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

51.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' LaRosa's stores, and

qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' LaRosa's stores as that term is defined by the FLSA and Ohio wage law.

52.     Upon information and belief, Robert Hall, Jr. owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' LaRosa's operation.

53.     Upon information and belief, the franchisor, LaRosa's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' LaRosa's stores.

54.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

55.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' LaRosa's stores as that term is defined by the FLSA and Ohio wage law.

56.     Upon information and belief, Robert Hall, Jr. has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' LaRosa's stores as that term is defined by the FLSA and Ohio wage law.

57.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

FACTS

**Class-wide Factual Allegations**

58.     During all relevant times, Defendants have operated the Defendants' LaRosa's stores.

59.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' LaRosa's stores.

60.     All delivery drivers employed at the Defendants' LaRosa's stores over the last three years have had essentially the same job duties.

61.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' LaRosa's stores washing dishes, sweeping, making boxes, stocking doughs, boxes, coke cookers, and the pull table, filling the ice container, and completing other duties inside the restaurant as necessary.

62.     Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked for Defendants' LaRosa's stores.

63.     The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

64.     Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

65.     The delivery drivers at the Defendants' LaRosa's stores work "dual jobs."

66.     Defendants require delivery drivers at Defendants' LaRosa's stores to provide cars to use while completing deliveries for Defendants.

67.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

68.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone

9

costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

69.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

70.     The Defendants' LaRosa's stores reimburse their delivery drivers based on a percentage of the orders the drivers deliver.

71.     Defendants reimburse their drivers for their automobile expenses by paying them approximately 6.5% of each order they deliver.

72.     For example, if a driver delivers a $10 pizza delivery order, the delivery reimbursement paid to the driver would be $.65 for that delivery.

73.     Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

74.     The Defendants' LaRosa's stores do not track or record the delivery drivers' actual expenses.

75.     The Defendants' LaRosa's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

76.     The Defendants' LaRosa's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

10

77. The Defendants' LaRosa's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

78. The Defendants' LaRosa's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

79. The Defendants' LaRosa's stores did not even reasonably approximate the delivery drivers' expenses.

80. The Defendants' LaRosa's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

81. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        a.    2017: 53.5 cents/mile
        b.    2018: 54.5 cents/mile
        c.    2019: 58 cents/mile
        d.    2020: 57.5 cents/mile

82. The delivery drivers at the Defendants' LaRosa's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

83. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

84. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' LaRosa's stores.

85. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable tipped minimum wage rate, and because the delivery drivers incurred

unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

86.     Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

87.     Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R. § 531.59.

88.     Defendants' delivery drivers are sometimes required to bring food and supplies from one of Defendants' stores to another. The drivers are not reimbursed at all for the miles they drive completing these tasks.

89.     When Defendants' delivery drivers work overtime, they are paid at the wrong overtime rate. Instead of taking time and a half of minimum wage, then claiming a tip credit, Defendants simply pay based on time and a half of the drivers' tipped wage rate.

90.     Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' LaRosa's stores.

**Plaintiff's Individual Factual Allegations**

91.     Plaintiff has worked at the LaRosa's store in Lebanon, Ohio since approximately 2014.

92.     Plaintiff is paid minimum wage minus a tip credit for all hours worked. Specifically, Plaintiff usually received $6.00 per hour, but began receiving $7.00 per hour in or around Spring 2020.

12

93.    When Plaintiff is not delivering food, she works inside the restaurant. Her work inside the restaurant includes stocking, doing dishes, cleaning, and completing other duties inside the restaurant as necessary.

94.    Plaintiff works dual jobs.

95.    Plaintiff's inside duties are not related to her delivery duties.

96.    Plaintiff is paid a tipped minimum wage for the hours she works inside the store.

97.    Plaintiff is required to use her own car to deliver pizzas.

98.    Plaintiff is reimbursed a percentage of the customer cost of the delivery orders she completes. Usually, she is reimbursed at 6.5% of her orders.

99.    Defendants' reimbursement policy results in Plaintiff usually receiving approximately $.26-$.36 per mile, on average.

100.    Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

101.    Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

102.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance; suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges, all for the primary benefit of Defendants.

103.    Defendants does not track the actual expenses incurred by Plaintiff.

104. Defendants do not ask Plaintiff to provide receipts of the expenses she incurs while delivering pizzas for Defendants.

105. Defendants does not reimburse Plaintiff based on her actual delivery-related expenses.

106. Plaintiff is not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

107. Defendants do not reimburse Plaintiff based on a reasonable approximation of her expenses.

108. In 2020, for example, the IRS business mileage reimbursement is $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. If Plaintiff completed a delivery order that cost $20, the result would be that Plaintiff was reimbursed $1.30 for the delivery. Considering Plaintiff's estimate of 5 miles per delivery, she was reimbursed approximately $.26 per mile for this delivery. Based on the IRS rate (5 miles x $.575 per mile = $2.88), Defendants under-reimbursed her by about $1.58 per delivery ($2.88 - $1.30), and between $3.16-$4.74 per hour ($1.58 x 2-3 deliveries per hour).

109. Defendants have failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

110. Defendants have failed to pay Plaintiff minimum wage as required by law.

111. When Plaintiff worked overtime, she was paid at the wrong rate. Upon information and belief, instead of calculating overtime at time and a half of minimum wage, then subtracting

out the tip credit, Defendants simply calculated overtime as time and a half Plaintiff's tipped wage rate.

## Collective Action Allegations

112.    Plaintiff brings the First and Second Counts on behalf of herself and all similarly situated current and former delivery drivers employed at the Defendants' LaRosa's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

113.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

114.    Defendants' unlawful conduct is pursuant to a company policy or practice.

115.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

116.    Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

117.    Defendants are aware or should have been aware that overtime must be calculated at time and a half full minimum wage for tipped employees, before deducting the tip credit.

15

118.    Defendants are or should have been aware that they must meet certain requirements in order to claim a tip credit from the wages of Plaintiff and other delivery drivers.

119.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

120.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

121.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

122.    The FLSA Collective members are readily identifiable and ascertainable.

123.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

124.    Plaintiff brings the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' LaRosa's stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

125.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

126. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

127. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

128. All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

129. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

130. Notice can be provided by means permissible under Rule 23.

131. The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

132. There are more than 50 Rule 23 Class members.

133. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

134. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, and O.R.C. § 4113.15.

135. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

136. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

137.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

138.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

139.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

140.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

     a.   Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

     b.   Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

     c.   Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

     d.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

e.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.   Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class members;

g.   Whether Plaintiff and the Rule 23 Class were properly informed of the requirements for taking a tip credit;

h.   Whether Plaintiff and the Rule 23 Class were required to work dual jobs but were paid a tipped wage rate for all hours worked;

i.   Whether Plaintiff and the Rule 23 Class were paid at the proper overtime rate;

j.   Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

k.   Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

l.   The nature and extent of class-wide injury and the measure of damages for those injuries.

141.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

142.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

143.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

19

144.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

145.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

146.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

147.    Defendants required and continue to require Plaintiff and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

148.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

149.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

150.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

151.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

152.     Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

153.     Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

154.     By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

155.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

156.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

157.     Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

158.     Defendants paid Plaintiff and the Rule 23 Class a tipped wage rate for non-tipped duties unrelated to their tipped duties.

159.     Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

160.     Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

161.     By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

162.     As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 4**
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiff and the Rule 23 Class)**

163.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

164.     Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

165.     Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the Rule 23 Class at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

166.     By not paying Plaintiff and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

167. As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, costs, and attorneys' fees.

**Count 5**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

168. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

169. During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

170. O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

171. By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

172. Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

173. Plaintiff's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

174. In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

175.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 6**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

176.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

177.    A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

178.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

179.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

180.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE,** Plaintiff Michele Neal prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a, O.R.C. § 4113.15, and the OMFWSA.

F.      An award of unpaid minimum wages, overtime wages, and unreimbursed expenses due under Section 34a, O.R.C. § 4113.15, and the OMFWA.

G.      An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

H.      Liquidated damages under O.R.C. § 4113.15.

I.      Compensatory and punitive damages under O.R.C. § 2307.60.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)

Philip J. Krzeski (Ohio Bar # 0095713
Louise M. Roselle (Ohio Bar # 14844)
Nathan (Ohio Bar #00
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
*lroselle@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

<u>/s/ Andrew Kimble</u>
Andrew Kimble